**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BEN MILLS,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-132-Orl-28KRS**

**WENNER MEDIA, LLC, d/b/a ROLLING**
**STONE MAGAZINE, AND ROLLING**
**STONE , LLC,**

        **Defendants.**

_____

## ORDER

Plaintiff Ben Mills ("Mills") brought the instant action alleging invasion of privacy against Defendants Wenner Media, LLC, and Rolling Stone, LLC. This cause is before the Court on Defendants' Motion to Dismiss (Doc. 20). For the foregoing reasons, Defendants' motion must be granted.

### I. BACKGROUND

This action arises out of an article that appeared in the October 28, 2004 edition of *Rolling Stone* magazine.[1] The article was based on author Matt Taibbi's ("Taibbi") experience posing as a volunteer in Orlando, Florida for the campaign to reelect President George W. Bush.

---

[1] The article was entitled *Bush Like Me: Ten Weeks Undercover in the Grass Roots of the Republican Party*.

During Taibbi's stint with the Bush campaign, he met what he described as "a great many very lonely people who came in because they knew the Bush offices were the one place where they could share certain deeply held ideas without being ridiculed." Id.  One such individual, Taibbi wrote, was the "portly Tampa sheriff's deputy Ben Mills [who] came in to share . . . very serious utopian ideas–like the benefits of having a society guarded by a clone army."  Taibbi recounted the following exchange with Mills:

> "We'd save a hell of a lot on benefits and medical expenses [by using a clone army]," [Mills] said.  "Cause you know if they got wounded . . . "
>
> "You could just shoot them," I said.
>
> "Exactly–pow!  Just shoot 'em dead, right in the ground."
>
> * * *
>
> "We'd just have a big breeding farm in Colorado," he said.  "Course, it'd be a security problem if they got out, you know, if you had rogue clones running around.  You'd have to have a special security force to maintain 'em."

*Bush Like Me: Ten Weeks Undercover in the Grass Roots of the Republican Party*, at 72, Doc. 20, Ex. 1.

Following the publication of the article, Mills was subjected to ridicule by his family, friends, and coworkers.  For instance, coworkers circulated an e-mail with an attachment of Mills on a mock cover of a *Rolling Stone* with captions that included "Exclusive!, Ben Mills," "CLONING, does it work?," "We take you inside the mind of a MADMAN," and "America's Top 10 Portly Sheriff's Deputies."  Mills subsequently filed this suit against Defendants seeking redress for mental suffering arising from the publication of his conversation with Taibbi.

## II.  MOTION TO DISMISS STANDARD

To warrant dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  In determining whether to grant a motion to dismiss, a court must accept all the factual allegations in the complaint as true and consider all reasonable inferences derived therefrom in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994); Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994).

## III.  ANALYSIS

The essence of the right of privacy in Florida is "the right of an individual to be let alone and to live a life free from unwarranted publicity." State Farm Fire & Cas. Co. v. Compupay, Inc., 654 So. 2d 944, 948 (Fla. 3d DCA 1995) (citation and internal quotations omitted).  In Florida, there are four categories of conduct which may be remedied through an action for invasion of privacy. Heekin v. CBS Broad. Inc., 789 So. 2d 355, 358 (Fla. 2d DCA 2001).  They are:

> (1) appropriation–the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion–physically or electronically intruding into one's private quarters; (3) public disclosure of private facts–the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye–publication of facts which place a person in a false light even though the facts themselves may not be defamatory.

Id. (quoting Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1252 (Fla. 1996)).

While Mills neglects to expressly identify which of the four categories of conduct Defendants' actions purportedly fall under, he appears to be claiming that Defendant invaded his privacy by publicly disclosing private facts about him.[2] To succeed in stating this type of privacy claim, Mills must have alleged that Taibbi's article contained facts about him which were: (1) published; (2) private; (3) offensive; and (4) not of public concern. Cape Publ'ns, Inc. v. Hitchner, 549 So. 2d 1374, 1377 (Fla. 1989) (citing Restatement (Second) of Torts § 652D (1977)).

Mills' claim fails, first, because neither his physique nor his musings about the benefits of a clone army are private matters. Indeed, Mills shared his idea of a clone army with Taibbi–a stranger–outside the confines of his home.

More importantly, Taibbi's article, including his exchange with Mills, clearly touches on matters of public concern. Through first-hand experience, Taibbi sought to better understand, and to help his readers better understand, the nature of support for President

---

[2] To the extent that Mills may be attempting to state claims under any of the other three categories of privacy claims, he clearly fails to do so. First, he has not stated an intrusion claim because there is no allegation in his complaint that Defendant intruded into his private quarters. Second, a claim of appropriation requires the claimant allege that his or her name or likeness was used for commercial benefit. See Fla. Stat. § 540.08(1); Lane v. MRA Holdings, LLC, 242 F. Supp. 2d 1205, 1213-15 (M.D. Fla. 2002); see also Restatement (Third) of Unfair Competition § 47 (noting specifically an exception for "use of a person's identity in news reporting [or] commentary"). No such allegation is contained in Mills' complaint. Finally, Mills' complaint does not allege that Taibbi's article portrayed him in a less-than-truthful light. See Lane, 242 F. Supp. 2d at 1222 (finding that plaintiff was "depicted truthfully and accurately as doing exactly what she did, exposing her breasts on a street in Panama City in exchange for a beaded necklace").

Bush. To this end, Taibbi recounted various conversations with Mills and other campaign volunteers in order to illustrate what he perceived to be some of the more peculiar characteristics of Bush's supporters. Regardless of how one assesses the quality of Taibbi's insights or the manner in which he conveyed them, they clearly dealt with an issue of public interest.

Were the Court to have waited until a later stage in this litigation to make what has proven to be an exceedingly easy decision, the cost might well have been a high one for publishers, writers, and, indeed, for the right to speech itself. In constitutional parlance, the specific risk would have been to chill the speech, not merely of Defendant, but of all writers and publishers who happen to offend the subjects of their publications. It is "a dangerous ground" upon which this Court opts not to "tread." See, e.g., Dresbach v. Doubleday & Co., 518 F. Supp. 1285, 1290 (D.D.C. 1981).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. 20) is **GRANTED.** The Complaint (Doc. 3) is **DISMISSED with prejudice**. The Clerk is directed to enter judgment in accordance with this Order and thereafter, close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 5th day of May, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party